UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20673-CR-GRAHAM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOE SCHMIDT ANDRE,          **REPORT AND RECOMMENDATION**

    Defendant.
_____/

On or about June 21, 2010, court-appointed defense counsel Ana M. Jhones ("Counsel") submitted a voucher application numbered FLS 09 2553 with appended time sheets requesting $26,829.00 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA"). Counsel also submitted time sheets and a Motion to Exceed the Statutory Cap For Attorney's Fees (the "Motion") in support of her voucher application.

After initially reviewing the voucher application, I requested a more detailed explanation regarding some of the entries listed in the voucher. To that end, I met with Counsel on October 28, 2010 to discuss my issues concerning the troubling entries. Following that meeting, Counsel provided additional information concerning the nature of her representation of Defendant Joe Schmidt Andre ("Defendant") in this case. Counsel represented Defendant for ten (10) months from her appointment on August 7, 2009 until June 14, 2010.

Counsel seeks $26,829.00 in her application, an amount which exceeds the $9,700.00 statutory maximum allowed for representation in non-capital felony cases under the CJA. As a result, United States District Court Judge Donald L. Graham entered an

Order of Reference **[DE # 1227]** referring the voucher application to the undersigned for a Report and Recommendation as to whether the fees requested by Counsel are appropriate. See 28 U.S.C. § 636(a); see also United States District Court for the Southern District of Florida Magistrate Judge Rules.

### Criminal Justice Act and Guidelines for Administration of the Criminal Justice Act

The United States Judicial Conference developed the Guidelines for Administration of the Criminal Justice Act (the "Guidelines") to assist courts in the application of the provisions of the CJA. See In re Burger, 498 U.S. 233, 234, 111 S.Ct. 628 (1991). In the Guidelines, judges are "urged to compensate counsel at a rate and in an amount sufficient to cover appointed counsel's general office overhead and to ensure adequate compensation for representation provided." See Section §6.02(B) of the Guidelines.

The CJA at 18 U.S.C. §3006A(d)(1) provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. 18 U.S.C. §3006A(d)(5); U.S. v. Griggs, 240 F.3d 974 (11th Cir. 2001). In order for the recommended fee amount to exceed the statutory maximum, however, the district court *must* first certify that the case involves "complex" or "extended" representation. 18 U.S.C. §3006A(d)(3). Second, the district court must conclude that the amount is necessary to provide Counsel with fair compensation.

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case. *See* Section §2.22B(3) of the Guidelines. A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id.*

## DISCUSSION

### This Case Was Complex

Under the Guidelines, in order to approve a request for compensation in excess of the statutory maximum, I must first find that the representation was either complex or extended. This case was complex for several reasons.

First, the very nature and number of charges involved in this case required Counsel to expend more time, skill and effort than normally required in the average case. Defendant was one of "twenty-nine defendants [charged] with violations of Title 21 U.S.C. §§ 846 and 841, conspiracy to possess with intent to distribute crack cocaine in excess of 5 kilograms and powder cocain in excess of 50 grams, triggering a mandatory minimum sentence of 10 years if convicted. Additionally, the original indictment charged countless substantive offense[s] of possession with intent to distri[bute] crack cocaine and cocaine powder" some of which "triggered mandatory minimums." (Motion at 1-2). The grand jury later returned a Superseding Indictment which brought the total number of defendants in this case to thirty (30) including Defendant.

The Superseding Indictment **[DE # 209]** contained fifty-four (54) counts. The government "alleged three separate conspiracies [and] countless substantive narcotics

offenses." (Motion at 2). Defendant was named in Count I (conspiracy to possess with intent to distribute cocaine and cocaine base), Count XXXIII (possession with intent to distribute cocaine base) and Count XLIII (possession with intent to distribute cocaine base). According to the Penalty Sheets attached to the Superseding Indictment, Defendant faced a maximum term of life imprisonment for the conspiracy charge, twenty years imprisonment for Count XXXIII and forty years imprisonment for Count XLIII. **[See DE # 209]**.

Second, the discovery in this matter "was voluminous. It commenced with applications for, affidavits in support of, and orders authorizing the interception of the telephones belonging to three separate defendants; lead defendant, Leon Anthony Frederick, Lamar Witherspoon and Ronald Rodreqiz Burke. Originally the Government produced fifty-four CD's. Subsequently, additional CD's were produced containing the 'line sheets' to these recorded conversations. Subsequently, on or about January 14, 2010 the Government produced additional evidence in the form of three additional CD's containing recorded conversations pertaining to ANDRE alone. In addition to all the CD's there were countless documents, in excess of 1,200 pages. Contained within these documents were NCIC's summarizing the criminal histories of the defendants. ANDRE had a prior criminal history. Subsequently, COUNSEL obtained copies of all of ANDRE's criminal history." (Motion at 2-3). The sheer volume of documents involved in this thirty (30) defendant case which Counsel had to review in order to effectively represent Defendant rendered this case more complex than the average case.

Third, the representation of Defendant required Counsel to make a number of court appearances in this case. Plaintiff represented Defendant at an initial arraignment/pre-trial detention hearing (8/12/09) and a second arraignment after the grand jury returned the

Superseding Indictment (8/26/09). Counsel also appeared at a number of hearings and status conferences (9/4/09, 11/6/09, 12/16/09, 1/13/10 and 3/10/10). Defendant entered a guilty plea to Count XXXIII of the Indictment. **[See DE # 767]**. Thereafter, Counsel represented Defendant at a change of plea hearing (3/19/10) and at sentencing (6/10/10). Defendant was sentenced to one hundred and thirty-nine (139) months imprisonment. **[See DE # 1167]**.

Lastly, this case was rendered more complex than the average case because "in addition to the charges in the superseding indictment, allegations of a murder of a confidential informant, and corruption within the Miami Police Department permeated this case. The Government, unbeknownst to COUNSEL sought and obtained authorization to monitor inmate calls from within the Federal Detention Center in Miami. On January 13, 2010, during a status conference . . . the Government announced what had been rumored since the commencement of these proceedings, i.e. that the Government was investigating a homicide through the prosecution of this case. The Government's quest to solve a murder of a confidential informant became a huge problem for COUNSEL in representing ANDRE." (Motion at 6).

It is clear from the record that the legal and factual issues in this case were unusual. Consequently, I conclude that this matter required the expenditure of more time, skill and effort by Counsel than would normally be required in the average case. As I have concluded that the representation provided by Counsel was complex, I must now review the voucher to determine the appropriate amount for which Counsel should be compensated in excess of the $9,700.00 statutory maximum.

## *Voucher Amount - Administrator's Review*

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy prior to my review. Counsel requested compensation for 12.2 in-court hours totaling $1,430.50. The CJA administrator made no changes to these figures.

The CJA administrator also reviewed the 206.8 out-of-court hours sought by Counsel totaling $24,466.50. Counsel sought compensation for 76.2 hours for "Interviews and conferences" and 33.6 hours for "Obtaining and reviewing records." Counsel also sought compensation for 36.6 hours for "Legal research and brief writing", 29.3 hours in "Travel time" and 31.1 in "Investigative and Other work." The CJA administrator decreased the total amount sought to $24,312.50.

Counsel also sought $279.70 in "Travel Expenses" and $652.40 in "Other Expenses." The CJA administrator concluded that the total amount documented by Counsel in the voucher was $26,675.10.

### In-Court Hours[1]

Counsel sought compensation for 12.2 in-court hours totaling $1,430.50. The CJA administrator made no changes to these numbers. I approve this amount as reasonable.

### Out-of-Court Hours

In the voucher, Counsel sought compensation for 206.8 out-of-court hours. The CJA administrator reviewed the voucher and slightly decreased the total amount claimed to

---

[1] The undersigned defers to the Court Clerk to verify all in-court time and expense allowances.

$24,312.50 (from $24,466.50).

Although the vast majority of Counsel's time entries are appropriate, Counsel included some entries that were not sufficiently specific for the undersigned to determine the purpose of the entries. Again, I met with Counsel on October 28, 2010 to discuss the troubling entries. Following that meeting, Counsel submitted a document entitled "Supplement to Attachment of CJA 20 Voucher by Ana M. Jhones" wherein she provided additional explanations for many of the entries we discussed.[2] A few of the troubling entries remain, however, and I recommend that the following entries be eliminated:

| Date | Description | Hours |
|---|---|---|
| 9/9/09 | Telephone conference with co-counsel Marty Feigenbaum. | 0.4 hours |
| 1/11/10 | Telephone conference with AUSA Andrea Hoffman. | 0.3 hours |
| 5/5/10 | Conference with investigator Jeannie Rogers. | 0.2 hours |

I recommend that the above entries be eliminated because these entries are not sufficiently detailed to comport with the requirements of the "Supplemental Instructions for Completing CJA20 Vouchers" form (the "Supplemental Instructions") provided by the Court. The Supplemental Instructions make clear that "[t]elephone conferences in excess of one tenth (0.1) hour require notation of reason for duration, and parties to conversation identified." Although Counsel identified the parties to the conversations, Counsel failed to

---

[2] To Counsel's credit, after the Court raised an issue regarding some of the entries in the voucher, Counsel voluntarily eliminated (3/2/10 "Correspondence to AUSA" 0.3 hours) and reduced (1/22/10 "Email to AUSA" reduced to 0.1 hours) some of her own entries. The Court commends Counsel for her willingness to police her own fees.

explain the reason for the duration of these conferences.

Similarly, Counsel included other entries for which she never provided any explanation:

| Date | Description | Hours |
|---|---|---|
| 9/8/09 | Email to all co-counsel. | 0.4 hours |
| 9/8/09 | Read facsimile received from Xpedia Copy. | 0.1 hours |
| 10/30/09 | Preparation of memo to Jeannie Rogers | 0.5 hours |
| 1/18/10 | E-mail to Xpedia Copy. | 0.2 hours |

I find, however, that the remaining out-of-court hours listed in the voucher application are appropriate. Factoring in the deductions listed above, I recommend that Counsel should be paid $24,038.00 for her out-of-court hours.

In making this recommendation, I have been mindful that when considering awards to Counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA: "[o]n the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. . . . On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel". *United States v. Mukhtaar*, 2008 WL 2151798, at * 2 (S.D. N.Y. May 21, 2008) (citations omitted). As other courts have explained, the CJA "was intended to partially alleviate the financial burden associated with

provision of these services which had been traditionally provided pro bono. The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *United States v. Diaz*, 802 F.Supp. 304, 307 (C.D. Cal. 1992) (quoting *United States v. Carnevale*, 624 F.Supp. 381, 383 (D. R.I. 1985)). In considering these principles with respect to the instant case, I conclude that an award of $24,038.00 for out-of-court hours, is fair, although admittedly not full compensation for Counsel's services.

## Expenses

Counsel sought $279.70 in "Travel Expenses." Counsel also sought $652.40 in "Other Expenses." The CJA administrator made no changes to either amount. I hereby approve both amounts.

## CONCLUSION

I commend Counsel for her professionalism and willingness to take this appointment; the undersigned is appreciative of her efforts. Notwithstanding this appreciation, as I have often quoted, when appropriate and in the spirit of the CJA: "What is commendable, however, is not necessarily compensable." *U.S. v. Smith,* 76 F.Supp.2d 767, 769 (S.D. Texas 1999). It is with this sentiment in mind that I recommend that some of the time incurred by Counsel be considered non-reimbursable.

To be clear, I am not making this recommendation for a lack of appreciation, rather, it is because the courts have the inherent obligation to ensure that claims for taxpayer provided monies are properly spent. Accordingly, I am constricted by the rules established in the Guidelines and in the Supplemental Instructions in awarding Counsel full compensation for all time incurred in this matter.

As I explained above, however, because the representation in this case was complex, I recommend that Counsel be reimbursed for an amount in excess of the statutory maximum of $9,700.00 in this case. Based upon my review of the time sheets, the Request Memorandum, the docket and filings in this case, I RECOMMEND that Counsel be paid $26,400.60 as fair and final compensation for her work in this case.

In accordance with 28 U.S.C. §636(b)(1), the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file any written objections with the Honorable Donald L. Graham, United States District Judge.

Signed this 16th day of November, 2010.

**PETER R. PALERMO**
**SR. UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

    Ana M. Jhones, Esq.
    Lucy Lara, CJA administrator